# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| THE PUTNAM GROUP, LLC, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 5:17-cv-67 (MTT) |
| FIRST CITIZENS BANK AND TRUST COMPANY, INC., *assignee and successor in interest to the FDIC as receiver for Georgian Bank*, | ) |
| Defendant. | ) |

## ORDER

First Citizen's Bank and Trust Company, Inc. has filed a three-part pre-answer motion. Doc. 4. For the reasons that follow, it is **DENIED**.

## I. MOTION TO DISMISS COMPLAINT FOR FAILURE TO JOIN RULE 19 PARTY

The Bank moves to dismiss the complaint for failure to join a Rule 19 party—N.D. Horton, Jr.—pursuant to Federal Rule of Civil Procedure 12(b)(7). Doc. 4 at 7-12. The complaint is premised on the Bank making false representations to the U.S. District Court for the Northern District of Georgia that it had The Putnam Group, LLC's consent to sell certain of its assets and apply the proceeds to an outstanding judgment held by the Bank against several related third parties. *See generally* Doc. 1. The Bank argues that it cannot be liable because Horton purported to consent to the sale on Putnam's behalf. Doc. 4 at 9-10. Accordingly, a key question in this case will be whether Horton had actual or apparent authority to act for Putnam in this matter. If Horton did not, the Bank and/or Putnam almost certainly have claims against him. The Bank accordingly begins with the assumption that Horton is jointly liable for any of its wrongdoing,[1] and

---

[1] Putnam maintains that Horton is not liable at all, and accordingly must maintain that Horton is not a joint tortfeasor. Doc. 7 at 8-10. Horton is not directly implicated as a joint tortfeasor by the complaint. That said, the Court also considers the consent motion and consent orders submitted by the Bank with its motion. Docs. 4-6; 4-7; 4-8. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("[T]he court may consider a document attached to a motion to dismiss without converting the motion into one for summary

concludes that Horton's intimate involvement in the underlying transactions renders him a required party under Rule 19(a).[2]

Rule 19(a) provides that certain persons are required to be joined where feasible.[3] The rule gives three circumstances in which a person will be a required party:

> [I]f (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). The Court "must base its decision on the pleadings as they appear at the time of the proposed joinder; it is only after the party has been joined that claims can be asserted against the party that are unrelated to the issues for which joinder was necessary." Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 7 *Federal Practice and Procedure* § 1604 (3d ed. Apr. 2017 update). If Putnam's prosecution of its claims against the Bank in Horton's absence does not implicate these concerns, the Bank's motion fails.

But the Bank does not rely on any of these reasons. Rather, the Bank puts forward a confusing argument based on an apparent misunderstanding of Eleventh

---

judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed."). Horton signed off on the relevant consent orders, purportedly on Putnam's behalf. Docs. 4-6 at 5; 4-7 at 4; 4-8 at 4. These documents also appear to support the proposition that any benefit to the Bank was, to the same degree, a benefit to Horton. Accordingly, the Court tends to agree with the Bank's position that Horton should be considered a joint tortfeasor at least for the purpose of determining his status as a Rule 19(a) party at this time.

[2] Of course, the Bank, correctly, does not stop with analyzing Rule 19(a), but looks to subsection (b) as well. Doc. 4 at 8-10. Strangely, the Bank conceded that NHD could be feasibly joined, arguing that the Court should dismiss the action anyway. Doc. 4 at 8, 10-11. Putnam pointed out that joining Horton would not be feasible because it would destroy diversity. Doc. 7 at 9. Then the Bank changed its position. Doc. 8 at 6.

[3] The parties talk about persons required to be joined if feasible under Rule 19(a) using the old, though still often used, label "necessary parties." *See, e.g.*, Docs. 4 at 9; 7 at 9. Of course, the current nomenclature for these parties is "required parties;" the two labels mean the same thing. *See Republic of Philippines v. Pimentel*, 553 U.S. 851, 855 (2008).

Circuit case law addressing joint tortfeasors. Before diving into the Bank's argument, some background is necessary. There is a bright-line rule that joint tortfeasors are not required parties under Rule 19(a). *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990); Fed. R. Civ. P. 19(a) advisory committee notes to 1966 amendments ("[A] tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability."). But the Eleventh Circuit has made some exceptions to this rule, such as in *Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 848 (11th Cir. 1999), relied on by the Bank.

The Bank, quoting *Laker Airways*, argues that "'a joint tortfeasor will be considered a necessary party when the absent party emerges as an active participant in the allegations made in the complaint that are critical to the disposition of important issues in the litigation' and 'under the circumstances . . . are more significant than those of routine joint tortfeasor.'" Doc. 4 at 8 (quoting *Laker Airways, Inc.*, 182 F.3d at 848). The Bank continues by asserting that the quantum of Horton's factual involvement in the events underlying the complaint makes him an active participant in the critical alleged events within the *Laker Airways* exception and thus a required party. *Id.* at 8-10.

In doing this, the Bank has put the cart before the horse. Without showing a valid Rule 19(a) consideration, there is no need to address the *Temple* rule.[4] This is confirmed by *Laker Airways* and the cases it relies on, as well as the subsequent case law cited by the Bank.[5]

---

[4] Though the Court does not need to resolve the issue, the Court does not think that the *Laker Airways* exception to the *Temple* rule is as broad as the Bank thinks; such an exception would swallow the rule. Joint tortfeasors will nearly always be active participants in the important issues in the litigation in such a bare factual sense.

[5] In *Laker Airways,* the court looked first to Rule 19(a), examining whether "complete relief [could] be granted with the present parties or the absent party has an interest in the disposition of the current proceedings." 182 F.3d 847 (citing Rule 19). The court reasoned that any judgment against the defendant might, practically speaking, hurt the absentee joint tortfeasor—a quasi-governmental entity operating under the purview of the British government—because the judgment would require a finding of partial behavior by the absentee, "inevitably comment[ing] upon the neutrality and independence of the process." *Id.* at 847-48. In other words, the absentee tortfeasor was required because the absentee tortfeasor's interests were at risk of practical impairment—adverse British governmental action—implicating Rule 19(a)(1)(B)(i). *See id.*

Though Rule 19(a) offers three, and only three, considerations, the Court notes two considerations that are not on that list: (1) the absentee's usefulness as a fact witness (even if the absentee "emerges as an active participant in the allegations made in the complaint that are critical to the disposition of important issues in the litigation");[6] and (2) considerations stemming from the nature of joint-and-several liability, such as contribution or indemnity rights by the named defendant against the absentee.[7]

The Bank does not explain why the Court cannot accord complete relief to Putnam on its claims against the Bank if it prevails. The Bank does not offer any

---

The language quoted by the Bank from *Laker Airways* is the rule laid down in *Haas v. Jefferson National Bank*, 442 F.2d 394 (5th Cir.1971). *Laker Airways, Inc.*, 182 F.3d at 848 (quoting *Haas*, 442 F.2d at 398). In *Haas*, the court expressly noted two Rule 19(a) considerations: (1) exposure of the named defendant to inconsistent obligations as to the stock at issue, and (2) the possibility of a practical impairment of the absentee's rights in the stock. 442 F.2d 394, 398; *see also Laker Airways, Inc.*, 182 F.3d at 848 (citing *Occidental Petroleum Corp. v. Buttes Gas & Oil Co.*, 331 F. Supp. 92, 106 (C.D. Cal. 1971), *aff'd*, 461 F.2d 1261 (9th Cir. 1972) (absentee's "status as a joint tortfeasor would not as a practical matter negate its status as a contractual party, *with interests that are covered by Rule 19(a)*" (emphasis added))).

Also, *Laker Airways* cites a line of cases recognizing the practical effect of adjudicating disputes that heavily impact unrepresented governmental interests (whether foreign or domestic), which is a Rule 19(a)(1)(B)(i) consideration. *See Boles v. Greeneville Hous. Auth.*, 468 F.2d 476, 479 (6th Cir. 1972) ("In order to grant the relief sought by the appellants this court would be compelled to hold in effect that not only did HUD misinterpret its own guidelines, but that it also misconceived its function and prerogatives under the Urban Renewal Act. To make such a determination without joining HUD is to deprive it of the right to defend the integrity of its administrative decisions in these areas which so intimately affect its policies and procedures." (internal citations omitted)); *Occidental Petroleum Corp. v. Buttes Gas & Oil Co.*, 331 F. Supp. 92, 106 (C.D. Cal. 1971), *aff'd*, 461 F.2d 1261 (9th Cir. 1972) ("In the present case, however, the fact that the absent co-conspirator is a foreign country could present countervailing considerations against the court's obstructing or countermanding the performance of a contract with it.").

The one additional *Temple*-exception case cited by the Bank (Doc. 4 at 8-9 n.4)—*Geico General Insurance Company v. Gould*, 595 F. App'x 901, 906 (11th Cir. 2014)—relied on the rule that "absent tort claimants [are] indispensable parties to [an] insurer's declaratory judgment action against the insured because, were the case allowed to proceed without them, "the claimants' interests would be prejudiced." 595 F. App'x at 906 (quoting *Ranger Ins. Co. v. United Housing of New Mexico*, 488 F.2d 682 (5th Cir.1974)). This clearly stems from Rule 19(a)(1)(B)(i).

[6] Though this could be rightfully considered in the context of Rule 19(b). *See Temple*, 498 U.S. at 7-8.

[7] Suing one of jointly and severally liable parties always leaves the named defendant at risk of inconsistent adjudications (what if they lose in a later contribution or indemnity suit against the absentee?). But, "'Inconsistent obligations' are not . . . the same as inconsistent adjudications or results. Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident. Inconsistent adjudications or results, by contrast, occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum." *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1040 (11th Cir. 2014) (quoting *Delgado v. Plaza Las Ams., Inc.*, 139 F.3d 1, 3 (1st Cir. 1998)). Accordingly, Rule 19(a) is not implicated by contribution or indemnity rights by the named defendant against the absentee regardless of the *Temple* rule.

competing claims as to any existing property interests. The Bank does not explain how proceeding in Horton's absence could subject it or Horton to inconsistent obligations. The Bank does not demonstrate any practical prejudice to either it or Horton. Rather, the Bank's arguments demonstrate that Horton is a material—perhaps key—fact witness. Docs. 4 at 9-10; 8 at 3-7. Further, the Bank offers many practical reasons why joining Horton could be convenient and otherwise a good idea. *Id.* But all this has nothing to do with Rule 19(a). The Bank's motion under Rule 12(b)(7) for failure to join Horton as a Rule 19 party is accordingly **DENIED**.

## II. MOTION TO TRANSFER

The Bank seeks transfer of the case to the Northern District, citing inconvenience to itself and its witnesses, the Northern District's involvement in several related actions by the Bank against Horton and Horton entities, as well as the Northern District's involvement in the consent orders at issue here. Doc. 4 at 12-17. But, as Putnam notes, it brought the action in this District, its documentary evidence and its witnesses are located in this District, the auction occurred in this District, and it was not a named party in the previous Northern District action. Doc. 7 at 12-14. Putnam does not appear to be named in the other Horton actions noted by the Bank. *See* Doc. 4 at 5. The Court is accordingly not convinced that "the convenience of parties and witnesses" or the "interest[s] of justice" dictate transfer. *See* 28 U.S.C. § 1404(a). The motion to transfer is accordingly **DENIED**.

## III. MOTION TO DISMISS COUNT VII FOR FAILURE TO STATE A CLAIM

Last, the Bank moves to dismiss Putnam's RICO claim under Rule 12(b)(6). Doc. 4 at 17-20. Putnam's complaint alleges that the Bank and its agents orchestrated two consent orders, effectively committing fraud and theft of Putnam property. Doc. 1 ¶¶ 8, 15, 46. The Bank's motion rests on two grounds. Doc. 8 at 9-10 (clarifying bases for dismissing Putnam's RICO complaint).

First, the Bank argues that the orchestration of the two orders cannot constitute the two predicate acts (referred to by the parties as "indictable activities") required to establish a pattern of racketeering. Docs. 4 at 19; 8 at 9-10; *see also* Doc. 7 at 17-18. This question seems to boil down to whether the Bank's orchestration of the two consent orders would be separately chargeable (whether as theft or fraud or some other crime) under Georgia law.[8] *See* 18 U.S.C. § 1961(1)(A). The Bank has offered no reason why these two acts would not be separately indictable; accordingly, the Bank has not demonstrated that Putnam's claim is not plausible. The Court declines to dismiss on these grounds.

Second, the Bank seeks dismissal of Putnam's RICO claim because Putnam has failed to allege a conspiracy. Docs. 4 at 19-20; 8 at 10. This seems to assume that Putnam asserts a RICO conspiracy claim under 18 U.S.C. § 1962(d). But Putnam never asserts a RICO conspiracy claim under 18 U.S.C. § 1962(d). Rather, Putnam seems to rely on *Mohawk*, which dealt with an 18 U.S.C. § 1962(c) RICO claim. Docs. 7 at 17; 8 at 9; *see also Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1283-84 (11th Cir. 2006). The Court accordingly declines to dismiss on these grounds also.

That said, Putnam is responsible in part for the Bank's exercise in futility. Local Rule 33.3 directed Putnam to file RICO interrogatories *with the complaint* identifying which subsection (or subsections) of 18 U.S.C. § 1962 it relied on. M.D. Ga. LR 33.3. Putnam did not file the required RICO interrogatories with the complaint. Three months after filing the complaint and after a reminder by the Court, Putnam filed the interrogatories, but they still fail to identify "[w]hether the alleged unlawful conduct is a violation of 18 U.S.C. § 1962(a), (b), (c), (d), or a combination thereof." Doc. 10 at 1. Accordingly, Putnam is **ORDERED** to file a supplement to the interrogatories correcting this omission by May 31, 2017. Also, if Putnam is asserting a 18 U.S.C. § 1962(c)

---

[8] In its late-filed RICO interrogatories, Putnam identified the criminal provisions as O.C.G.A. §§ 16-8-2 (Theft by Taking) and 16-8-3 (Theft by Deception). Doc. 10 at 4.

RICO claim, Putnam is **ORDERED** to provide, also by May 31, 2017, authority to support the position that its bare assertions of the existence of "unidentified" agents orchestrating the consent orders with the Bank state a plausible claim that a "person employed by or associated with [an] enterprise . . . conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity" under 18 U.S.C. § 1962(c).[9] Putnam should also address why the orchestration of two consent orders over several months is sufficient to state a claim for either an open or closed-ended pattern of racketeering activity.[10] The Bank shall provide any contrary authority by June 9, 2017.

**SO ORDERED** this 18th day of May, 2017.

                                            S/ Marc T. Treadwell
                                            MARC T. TREADWELL, JUDGE
                                            UNITED STATES DISTRICT COURT

---

[9] "[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). Putnam identifies the enterprise as the Bank "and unidentified parties/agents of the Bank." *See* Doc. 10 at 3; *see also* Doc. 7 at 17. Putnam notes that it "cannot correctly identify which agents of the Bank were complicit in the wrongful predicate acts until discovery is obtained. Agents of the Bank that orchestrated the alleged conspiracy will be added in a Motion to Add to this lawsuit upon learning their identities during discovery of this case." Doc. 10 at 3. And, "It is expected to be proven that there are other agents of the Defendant Bank that engaged in the alleged enterprise upon which damages are sought." *Id*. A corporation is distinct from its agents. *Cedric Kushner Promotions, Ltd.*, 533 U.S. at 161. A corporation and its agents can constitute an enterprise. *Mohawk*, 465 F.3d at 1283-84. However, in *Mohawk*, upon which Putnam relies, the complaint identified the agents as being third-party recruiters and identified their common purpose with the corporate defendant as recruiting illegal workers to work for the corporation. *Id.* at 1284. Putnam's complaint does not offer any such specifics, just conclusions. Also, it is notable that *Mohawk* was decided under the less stringent pre-*Iqbal* and *Twombly* pleading standards. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

[10] *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241, (1989) ("[A] pattern is [not] established merely by proving two predicate acts . . . . Congress had a more natural and commonsense approach to RICO's pattern element in mind, intending a more stringent requirement than proof simply of two predicates, but also envisioning a concept of sufficient breadth that it might encompass multiple predicates within a single scheme that were related and that amounted to, or threatened the likelihood of, continued criminal activity. . . . What a plaintiff or prosecutor must prove is continuity of racketeering activity, or its threat, *simpliciter*. . . . 'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."); *Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Comm.*, 953 F.2d 587, 593 (11th Cir. 1992) ("[The defendant's] alleged illegal activity was not a pattern of racketeering of the closed-ended type. We find that it was accomplished in too short a period of time, approximately six months, in order to qualify as a pattern of racketeering activity. . . . [P]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy the pattern requirement." (citations and quotations omitted)).